**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1068-16T1

JEFF CARTER,

     Appellant,

v.

FRANKLIN FIRE DISTRICT NO. 1
(SOMERSET), CUSTODIAN OF
RECORDS,

     Respondent.

_____

Argued April 26, 2018 – Decided October 3, 2018

Before Judges Simonelli, Haas and Rothstadt.

On appeal from the New Jersey Government Records Council, Docket No. GRC 2011-318.

Jeff Carter, appellant, argued the cause pro se.

Dominic P. DiYanni argued the cause for respondent Franklin Fire District No. 1 (Eric M. Bernstein & Associates, LLC, attorneys; Dominic P. DiYanni, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Government Records Council (Debra A.

Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Complainant Jeff Carter appeals from the September 29, 2016 final agency decision of the Government Records Council (GRC) adopting the initial decision of an administrative law judge (ALJ) who held that certain emails exchanged on the computer network of defendant Franklin Fire District No. 1 (District) are not "government records" subject to disclosure under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. We affirm.

OPRA mandates that "all government records shall be subject to public access unless exempt[.]" N.J.S.A. 47:1A-1. OPRA defines "government record" broadly to include "information stored or maintained electronically . . . that has been made, maintained or kept on file in the course of [a public officer's or public agency's] official business . . . or that has been received in the course of [a public officer's or public agency's] official business[.]" N.J.S.A. 47:1A-1.1.

Carter filed a request with the District for emails exchanged on the District's computer network between two District Commissioners and a former

2

Commissioner that concerned Political-Action Committee[1] money (the PAC money emails). The District denied the request, asserting the PAC money emails were not "government records" under OPRA because they did not concern the District's official business and were not made, maintained, or kept on file in the course of the District's or Commissioners' official business.

Carter filed a complaint with the GRC. In response, the District's Record Custodian, who was also a Commissioner, certified that as a Commissioner, he was "not required to make, maintain, or keep on file in the course of [his] official business as a Commissioner, any type of communication regarding PAC [m]oney." The GRC referred the matter to the Office of Administrative Law for an in camera review of the PAC money emails to determine whether they were made, maintained, or kept on file in the course of the District's or Commissioners' official business, and, if so, whether the Record Custodian unlawfully denied access to them and knowingly and willfully violated OPRA.

---

[1] A "Political-Action Committee" is defined as "[a]n organization formed by a special-interest group to raise and contribute money to the campaigns of political candidates who seem likely to promote its interests; a group formed by a business, union, or interest group to help raise money for politicians who support the group's public-policy interests." Black's Law Dictionary (10th ed. 2014).

The parties filed motions for summary decision pursuant to N.J.A.C. 1:1-12.5. Carter argued the PAC money emails are government records automatically subject to disclosure because they were stored or maintained electronically on the District's server, and because the District's Resolution 07-13 adopted a computer use policy that designated all emails on its computer network as the District's property (the Resolution).

The computer use policy declares that:

> [the District's] . . . intentions for publishing an Acceptable Use Policy are not to impose restrictions that are contrary to [the District's] established culture of openness, trust and integrity. [The District] is committed to protecting [the District's] employees, partners and . . . [the District] from illegal or damaging actions by individuals, either knowingly or unknowingly.

The purpose of the computer use policy is:

> to outline the acceptable use of computer equipment at all [District] locations or locations where [the District's] computer equipment is located. These rules are in place to protect the employee and [the District]. Inappropriate use exposes [the District] to risks including virus attacks, compromise of network systems and services, and legal issues.

The computer use policy also provides for the general use and ownership of data created on the District's computer system:

> While [the District's] network administration desires to provide a reasonable level of privacy, users should be aware that the data they create on the corporate systems (including email, Instant Messaging, and internet browsing content and activities) remains the property of [the District]. Because of the need to protect [the District's] network, [the District] cannot guarantee the confidentiality of information stored on any network device belonging to [the District].

The computer use policy advises employees of what system and network activities, including email and communication activities, are prohibited, and warns that "[a]ny [e]mployee found to have violated this policy may be subject to disciplinary action, up to and including termination of employment. Findings, materials, data and evidence of such violations will be maintained in accordance with the laws of New Jersey and in accordance with [OPRA]."

In his initial decision, the ALJ set forth the undisputed facts and noted that Carter had "submitted affidavits and extensive exhibits chronicling the ongoing legal disputes [between] the parties" which "[Carter] believe[d] . . . buttress[ed] his cause and evoke[d] OPRA precedents that welcome public scrutiny of government operations[.]" The ALJ determined:

> Yet, ours is a narrow question concerning the term "official business;" the definition does not expand in a larger panorama. OPRA facilitates access to a wide range of materials, but it is not an all-encompassing investigative tool, see MAG Management LLC v. Division of Alcoholic Beverage Control, 376 N.J.

Super. 534 (App. Div. 2005). . . . Carter argues further that to shield [the PAC money emails] is to embolden others to pursue electoral politics over public systems. Again, the workplace does not rely on OPRA alone for governance. Moreover, OPRA cases are often fact sensitive and I cannot speculate about circumstances not before me.

The ALJ concluded:

The plain language of [N.J.S.A. 47:1A-1.1] suggests that PAC money [emails] are not public records. They relate to expenditures in pursuit of public office, but are detached from the official business of that office. No rule of the GRC mandates that [emails] sent or received on a public server are automatically public records. Neither does . . . [the computer use policy] governing the use of its computers convert the [PAC money emails] into public records. The [computer use policy] is designed to give employees notice concerning expectations and forewarning of discipline for breaches. The [computer use policy] itself makes some allowance for personal use . . . The content of the [PAC money emails] might reveal that they are in whole or part public records, but on review I see nothing in the [PAC money emails] that intersects with [the District's] business.

In his exceptions to the ALJ's decision filed with the GRC, Carter argued that summary decision was inappropriate, the ALJ failed to view the facts in a light most favorable to him, and a fact-finding hearing was required to resolve disputed facts. He also argued that in light of the Resolution declaring emails to be the District's property, the GRC must conduct its own in camera review

6

of the PAC money emails to determine whether they are "government records" under OPRA, and there is no authority that exempts the PAC money emails from disclosure under OPRA.

The GRC rejected Carter's first exception, finding the ALJ set forth the undisputed facts before analyzing whether the PAC money emails fell within the definition of "government record" under OPRA. The GRC found the ALJ addressed Carter's submissions and stated they did not create a material fact that impacted the narrow question before the ALJ. The GRC also found the ALJ "addressed [Carter's] concerns that not allowing for disclosure would embolden others to use public systems for politics[.]"

The GRC also rejected Carter's second and third exceptions. The GRC found no need to conduct its own in camera review of the PAC money emails because the ALJ found they did not involve the District's or Commissioners' official business, and neither GRC rules nor OPRA provide that emails sent or received over a public server are automatically designated as "government records."

Regarding the Resolution, the GRC found that to meet OPRA's definition of "government record," the record must be made, maintained, or kept on file, or received in the course of official business. The GRC determined the ALJ's

finding that the Resolution did not convert the PAC money email into a "government record" simply because they were sent over a public server was consistent with <u>Dittrich v. City of Hoboken (Hudson)</u>, GRC Complaint No. 2007-193 (Apr. 2009), where the GRC found that if a public officer or public agency has not made, maintained, kept, or received the document in the course of his or its official business, the document is not a "government record" subject to disclosure.

The GRC concluded the ALJ reviewed the potentially responsive emails in camera and relied on the plain reading of the definition of "government record" in OPRA to reach his determination. The GRC also found the ALJ fairly summarized the evidence and explained how he weighed the proofs and why he granted the District's summary judgment motion, and his conclusions were aligned and consistent with the submitted facts. This appeal followed.

On appeal, Carter reiterates the arguments made to the ALJ and GRC and adds the following arguments:

      (1)   the GRC's reliance on <u>Dittrich</u> is misplaced;[2]

---

[2] We reject Carter's additional argument that the GRC's reliance on <u>Michelson v. Wyatt</u>, 379 N.J. Super. 611 (App. Div. 2005) is misplaced. The GRC did not rely on <u>Michelson</u>, but only cited it in a parenthetical as having been quoted in <u>Dittrich</u>.

(2)    the GRC was constrained to consider all evidence in the record, but ignored the dispositive impact of the Resolution;

(3)    the GRC is due no deference in its refusal to consider the Resolution's countervailing dispositive impact and harmonize it with N.J.S.A. 47:1A-1 and N.J.S.A. 47:1A-1.1 with respect to OPPRA's "official business" provision;[3]

(4)    due to the passage of time, this court should exercise original jurisdiction to resolve this matter;[4] and

(5)    if Carter prevails on appeal, he is entitled to reasonable attorney's fees for legal work performed below.

"Our review of a decision by the [GRC] . . . is governed by the same standards as review of a decision by any other state agency." Fisher v. Div. of Law, 400 N.J. Super. 61, 70 (App. Div. 2008).  We "will not overturn an agency's

---

[3]  We reject Carter's additional argument that the GRC is due no deference in its refusal to consider the Resolution's countervailing dispositive impact and harmonize it with N.J.S.A. 1:1-2, N.J.S.A. 10:4-8(c), and N.J.S.A. 59:4-1(c) with respect to OPRA's "official business" provision.  These statutes are not relevant or related to OPRA, and thus, offer no aid in interpreting the plain language of or discerning the Legislature's intent regarding the definition of "government record" in N.J.S.A. 47:1A-1.1.

[4]  We decline to address Carter's additional argument that the District abandoned any claim to an exemption.  Carter did not raise this issue before the ALJ or GRC, it is not jurisdictional in nature, and it does not substantially implicate the public interest.  Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted).

decision unless it violates express or implied legislative policies, is based on factual findings that are not supported by substantial credible evidence, or is arbitrary, capricious or unreasonable." Ibid. Accordingly, our role in reviewing an agency action is generally restricted to three inquiries: (1) whether the agency action violates express or implied legislative policies; (2) whether the record contains substantial evidence to support the agency's findings; and (3) whether the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). "[I]f substantial evidence supports the agency's decision,'[we] may not substitute [our] own judgment for the agency's even though we might have reached a different result[.]" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

Moreover, "[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "We

will defer to an agency's interpretation of both a statute and implementing regulations, within the sphere of the agency's authority, unless the interpretation is 'plainly unreasonable.'" In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010).

The GRC is authorized to interpret OPRA, see N.J.S.A. 47:1A-7(b), and this deferential standard has been applied to its holdings. See Fisher, 400 N.J. Super. 61, 70 (App. Div. 2008). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div.) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)), certif. denied, 200 N.J. 210 (2009). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid.

"In construing a statute, our 'overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" Bermudez v. Kessler Inst. for Rehab., 439 N.J. Super. 45, 50 (App. Div. 2015) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). As our Supreme Court has instructed:

> [w]hen interpreting a statute, our main objective is to further the Legislature's intent. To discern the Legislature's intent, courts first turn to the plain language of the statute in question. In reading the language used by the Legislature, the court will give words their ordinary meaning absent any direction from

11

the Legislature to the contrary. "If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over."

Where the plain meaning does not point the court to a "clear and unambiguous" result, it then considers extrinsic evidence from which it hopes to glean the Legislature's intent. Included within the extrinsic evidence rubric are legislative history and statutory context, which may shed light on the drafters' motives. Likewise, interpretations of the statute and cognate enactments by agencies empowered to enforce them are given substantial deference in the context of statutory interpretation.

[TAC Assocs. v. N.J. Dep't of Envtl. Prot., 202 N.J. 533, 540-41 (2010) (second alteration in original) (citations omitted).]

"We must presume that the Legislature intended the words that it chose and the plain and ordinary meaning ascribed to those words." Paff v. Galloway Twp., 229 N.J. 340, 353 (2017).

The plain language of N.J.S.A. 47:1A-1.1 clearly and unambiguously defines "government record" as "information stored or maintained electronically . . . that has been made, maintained or kept on file in the course of [a public officer's or public agency's] official business . . . or that has been received in the course of [a public officer's or public agency's] official business[.]" (Emphasis added). The Legislature did not include the words "personal business" or "any business" in the definition of "government record," indicating

its intent to limit disclosure of information stored or maintained electronically on a public server, including emails, to that which concerns the "official" business of a public entity or public officer, meaning emails that were "[a]uthorized or approved by a proper authority[.]" See Black's Law Dictionary, (10th ed. 2014). The PAC money emails were not "government records" under OPRA because they did not pertain in any way to the District's and Commissioners' official business and were not authorized or approved by the District. They were personal in nature not subject to disclosure under OPRA.

The Resolution does not change this result. The definition of "government record" does not include every document that by virtue of a public agency's computer use policy becomes the agency's property because it is stored or maintained on the agency's computer network. Thus, the Resolution and the District's ownership of the PAC money emails are irrelevant in determining if the emails were made, maintained, or kept in the course of the District's official business.

Further, we reject Carter's assertion that because the Resolution mentioned OPRA, the Legislature intended for all electronically stored information or data owned by the District to constitute a "government record" under OPRA. However, because the statutory definition of "government record"

A-1068-16T1

is clear and unambiguous, the Resolution does not represent appropriate extrinsic evidence to interpret and give meaning to the Legislature's intent in enacting OPRA and defining "government record."  See TAC Assocs., 202 N.J. at 540-41.  The Legislature was not guided by the Resolution and the document cannot inform a reading of the definition of "government record."

With respect to emails, the Resolution makes no reference to the history of OPRA or what the Legislature intended in passing OPRA and allowing public access to a "government record."  The Resolution only warns that "[a]ny [e]mployee found to have violated this policy may be subject to disciplinary action, up to and including termination of employment.  Findings, materials, data and evidence of such violations will be maintained in accordance with the laws of New Jersey and in accordance with [OPRA]."  The Resolution does not state that the data and materials covered by the District's computer use policy, which include emails, are automatically subject to disclosure under OPRA.

OPRA does not "'authorize a party to make a blanket request for every document' a public agency has on file."  Bent v. Stafford Police Dep't, Custodian of Records, 381 N.J. Super. 30, 37 (App. Div. 2005) (quoting Gannett N.J. Partners, LP v. Cty. of Middlesex, 379 N.J. Super. 205, 213 (App. Div. 2005)).  "OPRA does not authorize unbridled searches of an agency's property."  Ibid.

A-1068-16T1

"Not every paper prepared by a public employee fits within the definition of a government record for purposes of OPRA." Bart v. Paterson Hous. Auth., 403 N.J. Super. 609, 617 (App. Div. 2008).

As such, not every email stored or maintained on a public server is within the purview of OPRA. An employee of a public agency may use a government email account to send an innocuous, personal email, which in no way pertains to the agency's "official business." It would be an overreach to suggest that such an email is subject to disclosure under OPRA just because it was sent or received on a public entity's computer network. The email must first fall within the definition of a "government record," which limits the disclosure to emails made, maintained, or kept in the course of the public agency's or public officer's "official business." Thus, the Resolution's declaration that all emails created on the District's computer network are the District's property does not automatically deem such emails as having been made, maintained, or kept in the course of the District's business and therefor classify them as "government records" under OPRA.

We have considered Carter's remaining arguments in light of the record and applicable legal principles and conclude there is sufficient credible evidence in the record as a whole supporting the GRC's decision. R. 2:11-3(e)(1)(D). We

A-1068-16T1

are satisfied the GRC's decision was not arbitrary, capricious, unreasonable, contrary to the law, or a misinterpretation of OPRA's definition of "government record."  We conclude that Carter's additional arguments to the contrary are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1068-16T1